Good morning. May it please the Court, Jonathan Libby appearing on behalf of the appellant Bernard Smith. I'd ask to reserve two minutes for rebuttal. Thank you. Your Honors, Bernard Smith is currently serving a life sentence after being convicted by an all-white jury of possession of 14 hundredths of a gram of rock cocaine. The racial makeup of the jury was a direct result of the prosecutor's discriminatory use of peremptory challenges, the evidence of which is overwhelming. First, we have the statistical evidence, which the district court found established a prometheus case in the first step of the Batson analysis. The prosecutor used five of ten peremptory challenges to strike five or six prospective black jurors in a jury pool of 30 qualified jurors. She challenged the remaining black juror for cause, and she struck the only Hispanic juror. By my calculations, prospective black jurors were struck at a rate more than six times the rate that white prospective jurors were struck. As this Court has indicated, a court may infer invidious discriminatory purpose from the totality of the facts, including where the prosecutor challenges every member of a racial group, and that's precisely what happened here. Now, to start out with, we have the question of the standard of review and the facts of the Wade case and the relationship between the California standard and the Federal standard. And there's a Supreme Court case pending on that question now. Is that right? There is. The Johnson case, which I believe will be argued on the 18th of this month. So is the first thing we do with this case, hold it until Johnson is decided? I don't believe that's necessary, Your Honor. Johnson deals with the standard for prima facie cases. In this case, we've already moved to the third step of the Batson analysis, because what occurred here is the trial judge, in fact, before even determining whether there was a prima facie case, jumped to step two of the Batson analysis and had the prosecutor give her race-neutral reasons for the various strikes. So we're already at step three of the Batson analysis, and Johnson only deals with step one, so we don't really need to wait for Johnson. And how do we know that Johnson only deals with step one? I understand that's the basic question, but is there some assurance that they're not going to say anything else? Well, there's certainly not. We don't have complete assurance, but that's the only certified question before the Court. Okay. Go ahead. But don't they have to first look at what the standard, appropriate standard of review would be, whether and whether the Batson standard is the same standard as the Willer standard? Well, only for purposes of determining whether there was a prima facie case here. And, again, since we've already, and both parties agree, we've already jumped to step three, which under Hernandez says we can pretty much ignore step one since we're already at step three of the Batson analysis. I'm just not as sanguine as you are that the Supreme Court isn't going to touch on this. Fair enough, Your Honor. Though even if the AEDPA standards applied, I believe we would still win here, because what the trial judge here, his decision resulted, his decision was based on an unreasonable determination of the facts in light of the evidence presented. The evidence presented is what we're going through here. And so the judge could not have reached the decision that he reached based on the evidence presented. So in addition to the statistical evidence, we also have the racially sensitive nature of the trial. Mr. Smith was arrested by the same officer who had stopped him earlier that day, ostensibly because he was black, and he looked suspicious in the particular area of Long Beach. And the officer told him to get out of Long Beach. And that same officer later that evening arrested him purportedly for public drunkenness, and that's when the drugs were found. So this is, as the Seventh Circuit talks about in the Mahaffey case, a case where the racial composition of the jury could potentially be a factor in how the jury might respond to a defendant's defense at trial. In addition, we have the pattern of strikes. The prosecutor never struck two black jurors in a row. The district court, in fact, found that this demonstrated a consciousness of race on the part of the prosecutor, and was done specifically to avoid triggering of a Wheeler couch. So this, in addition to the other factors of the case. Kagan. Kagan. I mean, isn't this sort of a question? I mean, let's assume the prosecutor had – really wasn't being racially discriminatory and really had reasons to strike these people. At the same time, he's still going to – he or she is still going to be conscious of Batson and the need to not appear to be doing that, even if he isn't doing it. And then he's sort of in a damn-if-you-don't, damn-if-you-don't situation, because if he does them all in a row, then you point to that. If he does them not in a row, then you point to that. Well, but the prosecutor is not supposed to be considering race in determining that. This is what I'm trying to do. Let's assume he wasn't considering race, but he was considering, quite intelligently, the fact that there's still a Batson problem. Somebody could think he was considering race. He says, look, I've looked at all the jurors, and I, you know, objectively believe that these are the ones I don't want. But now I've noticed that they're predominantly black. I better – somebody's going to think I'm doing it because of race. I just don't think it's a very strong factor, I guess, is what I'm saying. You have other factors that are more important. Okay. That's fair. I just – given what I – I don't think it's pure happenstance that this, in fact, took place. And that's what the district court did. Is there anything in the record about how the jurors were seated in the stand? Were they seated black, white, black, white? Because sometimes there's nothing like that. There's nothing in the record. No, there's nothing in the record. So I'm not sure how, in fact, they were seated in the box. Anything about the procedure? Were they seated individually and then strictly? I believe there were 12 in the box. At the time? Yeah. And there were five out of the six of the entire jury pool were seated at the time? Well, I mean, this went through – this was over two days of jury selection. So jurors would be replaced in an in-and-out taken from the audience and put in place. So this was after two days of – Isn't the central legal issue here simply whether the district court's findings of fact on – as to the racial discriminatory use of preemptory challenges must be – must be regarded by – you have to – we have to take a look at clear error, isn't that it? You do look – right. Correct, Your Honor. You look at the totality of the factors to determine – And isn't that the central issue in this case? Whether the trial court's determination that there was not racial discrimination on the part of the prosecutor, that's certainly the central factor in this. Right. But the district court has found that he's concurred with the trial court's – with the findings, hasn't he? That's correct. But what the district court did here was not evaluate all of the evidence we presented in its totality. Okay. What the district court, in fact, did here was not – So you're claiming there's clear error here? Absolutely, Your Honor. Absolutely. That's the central issue. Clear error on the district court, and what about – As well as with respect to the findings, the ultimate finding of the trial court, that the prosecutor did not engage in racially discriminatory strikes. What was the year of this trial? Beg your pardon? It was 1999. 1999. Yes. Additional evidence is the fact – some of the facts stated by the prosecutor as a basis for striking some of the black jurors was, in fact, objectively contrary to the record. The prosecutor indicated that with respect to two of the black jurors, that they were being struck because they had relatives with narcotics convictions. And, in fact, the prosecutor made clear with respect to all of her strikes that the had narcotics convictions. But with respect to two jurors, numbers 5808 and 0704, there was no such evidence in the record that they had relatives with narcotics convictions. And this Court has made clear when the facts in the record are objectively contrary to the prosecutor's statements, serious questions about the legitimacy of the prosecutor's reasons for the challenges are raised. In addition, we went through a comparative analysis, pretty extensive comparative analysis in the brief. I just like to highlight the fact that here the – there were two white jurors who remained on the jury who had relatives with narcotics convictions, yet all of the black jurors were struck purportedly because they had relatives with narcotics convictions. Jurors 1955 had a nephew who had been arrested for drugs. Juror 9856 had a younger brother who had been convicted of drug possession. So based on that comparative analysis, we have additional evidence that the prosecutor was exercising these strikes based on race. Did you want to save some time? I do, Your Honor. All right. Thank you, Your Honor. Thank you. Good morning, Your Honors. Deputy Attorney General Gary Lieberman for Respondent. First, I would disagree with Appellant's counsel that there's overwhelming evidence of purposeful racial discrimination. I don't – I think that the – Do you agree that it was a prima facie case? I don't quarrel with that. I think that was a close call, frankly, given the record. But, no, I don't quarrel with the district court finding of a prima facie case. But – Now, the State court did not find there was a prima facie case. That's correct. Did the State court make any findings with regard to the reasons that were given after that? Yes. Yes. And that's why I believe that deference must be accorded to the State court's decision, because not only – okay, there was the – because this was a case that was prior to People v. Box, there's the – there was the possibility that the trial court applied the wrong standard in establishing – in establishing – in ruling that there was no prima facie case. However, the trial court went beyond that. The trial court solicited the prosecutor's reasons and then made specific findings of fact that those reasons were valid and the challenges were not race-based. What about counsel's argument that there – that there remained some white jurors on the jury who did have relatives who had been convicted of narcotics violations and that they were allowed to stay? Yes. I believe one of those particular jurors, if I could flip through my notes, was juror number 1955, and this particular juror had a nephew who was arrested for a drug offense, served time in jail, and the nephew's father had been charged with murder, and this – this juror was allowed to remain. However, the – the key fact with respect to this juror, which counterbalanced the fact that he had some, you know, two relatives that were involved in criminal activity, was the fact that this juror had family members who were in law enforcement who he socialized with and hadn't reported any negative experiences. So these relationships, you know, more than counterbalanced the fact that his nephew had been arrested for a drug offense, and as the district court aptly pointed out, the – this particular juror didn't seem particularly sympathetic to his nephew's situation. The juror in the – Nobody really asked the – to me, this was the most disturbing part of the record because the – in contra distinction, the prosecutor challenged two black jurors who really didn't say that their relative was convicted for a narcotics address, although he understood him to have said that or said he understood him to have said that, and no one – did anybody ask them what they thought of it? Did they think – I mean, were given a chance to give their opinion of these people? I'm sorry. Were they asked? They didn't, in fact, know that these – that the individuals were convicted for narcotics offenses. They certainly didn't express any opinion as to what they would have thought if they were convicted for narcotics. In other words, I don't see the sympathy thing as a fair consideration or even when the other individuals didn't express sympathy for people who were convicted for narcotics offenses. That may be, but I think that it is a factor in why this prosecutor would have allowed this juror to remain, notwithstanding the fact that his nephew had been arrested for a drug offense. But I think the larger point is the fact that this particular juror had family members in law enforcement whom he socialized with and hadn't reported any negative experiences. So this, in the prosecutor's mind, would probably be a favorable juror from a prosecutorial perspective. This case, in addition to perhaps some of the reasons that the state court gave not being fully supported in the record, causes me trouble for another reason, and that's that this is a case where there was a suggestion that cocaine had been planted on the defendant when he had had an earlier encounter with the police that day. And we've seen that that has happened and did, in fact, happen with various police departments. It was even discussed during Johnny Cochran's funeral yesterday. And I'm just wondering if we can take that factor into account in finding a motivation by the — a special motivation by the DA in this case. I would say not, Your Honor, because I think that the — while there was some mention of race in the defense case in chief, the defendant claimed that the police department approached him because he was a muscular African-American male. I think that the alleged motivation to plant the narcotics, and of course, I would — you know, there's no evidence other than the defendant's word that — Wasn't that an argument that was going to be made at trial? Yes, that it was planted, but it was not — but the argument was not based on race as to the officer's purported motivation to plant the narcotics. The argument and the evidence was based on the fact that this person had just gotten out of prison or was on parole. He had multiple prior offenses. So, you know, as defense counsel argued in the closing argument, defense counsel didn't argue that this was a race case. Defense counsel argued that, well, what plausible reason could Officer Alou have had to have planted these drugs? And the defense counsel argued, well, because he's a multiple offender. The — So you're basically saying that there wasn't a racial factor in the case? I'm — I think that there — race — I would say — I would disagree that this was a racially charged or racially sensitive case. I — but, no, race — race was mentioned. But I don't think that — I think that the — another critical fact, if I may. Even under the defendant's version of the facts, on the first encounter with Officer Alou, the defendant was allowed to go. It was his Caucasian companion who was arrested. So even under the defendant's version of the facts, there wasn't a — there wasn't a racial situation with the — it was the white person who got hauled in, and the defendant was allowed to go. So — What significance do you accord to the fact that, in at least several instances, the prosecutor's representation about what the black juror said that led to her being challenged was not accurate, at least with regard to whether they had relatives who were, in fact, had narcotics violations? I would have two responses to that. First, this isn't a situation where there's nothing whatsoever in the record with respect to those jurors about narcotics. Narcotics was mentioned, albeit in tentative terms. But it wasn't mentioned because they were asked, and they said they didn't know. That's why it was mentioned. I don't — I don't recall whether — that may have been with one particular juror, but I know one was rattling off offenses, and then she volunteered. I don't know whether one of them was narcotics or not. Because everybody had been asked that, so she thought she had a responsibility to say so. Perhaps. The net result was they didn't know. Two of them didn't know. And in both instances, there was a representation that they did have such a relative, even though they said they didn't know. That is true. However, the fact — you know, Vardir, not having gone through it too many times myself, but moves very quickly. That's true. And the only reason I find this troublesome is, A, it was repeated. The same thing was repeated. And that in dealing with white jurors, the tendencies seem to be the opposite, i.e., to look for a reason to take what they said as not troublesome, as, for example, the example you gave before. So it's sort of what you hear and what — which can be so totally unconscious, but what you hear and how you evaluate things in this instance seem to have some pattern, and that's my concern. Yeah. See, I would disagree, Your Honor, because if you look at the first juror who was excused, the first was a white juror, 1074, cousin arrested for a drug offense. This juror — that juror was kicked. The third peremptory by the prosecutor was a white juror, juror number 7069, had a roommate who was taking drugs. So these reasons were applied across the board. Yes, the prosecutor may have been mistaken with respect to her characterization of two of the black jurors' responses in that the responses were tentative as opposed to stating, in fact, that their relative had a drug arrest. But the fact that the prosecutor may have been mistaken does not mean that the prosecutor was lying, and that's really the issue. No, no. He may not have been lying, but he may have been hearing things. If he had a motive, he — I think that sort of thing happens. You sort of hear what you want to hear. So. Well, I — That's different than lying. But I think here that we need to step back and, you know, look at the — look at the standard of review as well, because here there are two distinct layers of deference that this Court needs to apply. We understand that, counsel, and you're over your time. Thank you. We do understand the two layers of the standards of review and what's going on with Johnson, so thank you. Thank you, Your Honor. You have 53 seconds. Thank you, Your Honor. Your Honors, the defense in this case was, in fact, based on race. The district court, in fact, made a finding that race was a factor in this case. That's at page 426 of the excerpts. The defense was that Mr. Smith had been harassed because he was black and that the officer, in fact, arrested him because he was black. Race was clearly a factor in this case and was perhaps the basis for the prosecutor seeking to remove all blacks from the case. There was no question that there were white jurors. Did the State court make a finding on that? No. The State court said very little. After hearing from the prosecutor, he simply said, I don't find a prima facie case, but I feel the reasons are valid. I do not feel the race-based challenges that she has made. That's the extent of the trial court's findings. Mr. Smith was entitled to a jury, free from the taint of racial discrimination. I think the only inference that can be taken from the totality of the circumstances here is that he was deprived of his right to equal protection. All right. Thank you, counsel. Thank you, Your Honor. I will take Walton under versus Kerry under submission at this time, but we may later determine to vacate submission pending Johnson. Thank you, counsel. All right. We will take up Thomas versus Rowe. Thank you, Your Honor.
judges: Wardlaw,berzon, Fitzgerald